Slip Op. 07-67

UNITED STATES COURT OF INTERNATIONAL TRADE

_____ :
ROCKWELL AUTOMATION, INC.          :
f/k/a ROCKWELL AUTOMATION/          :
ALLEN-BRADLEY CO., LLC,             :
                                    :
                Plaintiff,          :
                                    :
          v.                        : Before: Richard K. Eaton, Judge
                                    :
UNITED STATES,                      : Court No. 03-00007
                                    :
                Defendant.          :
_____:

OPINION AND ORDER

[Plaintiff's motion for summary judgment granted, in part;
Defendant's cross-motion for summary judgment denied.]

Dated: May 7, 2007

*Neville Peterson LLP* (*John M. Peterson* and *Curtis W. Knauss*), for
plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S.
Williams*, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, United States
Department of Justice (*Bruce N. Stratvert*), for defendant.

Eaton, Judge: At issue is the proper classification of
merchandise described by plaintiff Rockwell Automation, Inc.
("plaintiff" or "Rockwell") as short body timing relays.  Before
the court are the cross-motions for summary judgment of plaintiff
and defendant the United States ("Government").  Jurisdiction is
had pursuant to 28 U.S.C. § 1581(a) (2000).  For the reasons set
forth below, the court grants plaintiff's motion for summary

judgment, in part; denies the Government's cross-motion for

summary judgment and finds that plaintiff's merchandise, with

respect to which plaintiff supplied samples to the court, is

properly classified as relays under the Harmonized Tariff

Schedule of the United States ("HTSUS") Heading 8536, which

covers "[e]lectrical apparatus for switching or protecting

electrical circuits, or for making connections to or in

electrical circuits (for example, switches, relays, fuses, surge

suppressors, plugs, sockets, lamp-holders, junction boxes), for a

voltage not exceeding 1,000 V," subject to a duty of 2.7% *ad

valorem*.[1]


BACKGROUND

Plaintiff's merchandise is solid state electrical timing

devices imported from Japan ("subject merchandise")[2] used as

components of integrated electrical systems that may include

several other electrical components.  Their function is to direct

electricity to specific apparatus at a specified time after power

_____

[1]      Reference is made to the 1999 version of the HTSUS and
chapter notes, which were in force at the time the subject
merchandise was entered.

[2]      The parties' briefs describe the subject merchandise in
substantially similar language.  *See* Pl.'s Revised Mem. Supp.
Mot. Summ. J. 1-5; Def.'s Mem. Supp. Mot. Summ. J. & Opp'n Pl.'s
Mot. Summ. J. ("Def.'s Mem.") 5 n.2.  Instead of referring to the
subject merchandise as "relays," however, the Government uses the
description "solid state timers."  Def.'s Mem. 7 n.3.

has been applied to the entire electrical system.  The most widely used application of these devices is in a control panel on an assembly operation or conveyor line.

Each timing device consists of a number of electrical parts contained in a small six-sided, plastic box with a front dial and a rear connection port.  Its interior parts are: a set of moveable contact blocks; a set of stationary contact blocks; a wound magnetic coil mounted on a stack of steel laminations; and a circuit board containing various components, including resistors that regulate the period of time between cycles.  *See* Pl.'s Revised Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 1, 3, 4; Def.'s Mem. Supp. Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mem.") 5 n.2.

Customs has consistently classified plaintiff's merchandise as "[t]ime switches with clock or watch movement or with synchronous motor: . . . Valued over $5 each," under HTSUS subheading 9107.00.80.  Beginning in 1999, Rockwell regularly disputed Customs's classification, arguing that they were properly classifiable as relays under Heading 8536.  In July, 1999, Customs affirmed its classification of Rockwell's merchandise, describing the devices in the ruling as solid state timing relays, under Heading 9107.  *See* HQ 962138 (July 28, 1999), *reprinted in* 36 Cust. Bull. & Decs. 24 (June 12, 2002), Attach. A ("1999 Ruling") 27, 30-31 ("[W]e find that the Bulletin

700 solid state timing relays are classifiable under subheading 9107.00.80."). Thereafter, between December 9, 1999, and February 22, 2000, Rockwell entered the subject merchandise under HTSUS subheading 9107.00.80. *See* Summons (Jan. 9, 2003). Between November 13, 2000, and January 5, 2001, Customs liquidated Rockwell's entries under HTSUS subheading 9107.00.80, as entered. *See* Summons (Jan. 9, 2003).

In January 2002, Rockwell timely filed Protest Number 3901-01-100230, contesting Customs's classification of the subject merchandise. *See* Protest Number 3901-01-100230. In its supporting papers, Rockwell reasserted its argument that the subject merchandise was properly classifiable under HTSUS Heading 8536. *See* Rockwell's Mem. P. & A. Supp. Protest 1.

On June 12, 2002, Customs published notice of its intention to modify the 1999 Ruling. *See* Proposed Modification of Ruling Letter and Revocation of Treatment Relating to Tariff Classification of Relays, 36 Cust. Bull. & Decs. 24 (June 12, 2002). Nonetheless, on July 23, 2002, it issued HQ 964656 reaffirming those portions of the 1999 Ruling and again classified Rockwell's merchandise under Heading 9107. *See* HQ 964656 (July 23, 2002), attached as Ex. 3 to Def.'s Mem. ("2002 Ruling"). On August 8, 2002, Customs denied Protest Number 3901-01-100230 with respect to the subject merchandise, stating that its decision was based on the 1999 Ruling. *See* Protest Number

Court No. 03-00007                                              Page 5

3901-01-100230.

On January 9, 2003, plaintiff filed a summons with the
Court, commencing this action to challenge Customs's denial.  By
its motion for summary judgment, Rockwell claims that the subject
merchandise is properly classifiable under HTSUS Heading 8536.
By its cross-motion for summary judgment, the Government urges
the court to sustain Customs's classification of the subject
merchandise.


                          STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
USCIT R. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
247 (1986).  In the context of a classification action, "summary
judgment is appropriate when there is no genuine dispute as to
the underlying factual issue of exactly what the merchandise is."
*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed.
Cir. 1998) (citations omitted).  Under such circumstances, all
that remains is the interpretation of the relevant tariff
provisions, which is a question of law.  *See Boen Hardwood
Flooring, Inc. v. United States*, 357 F.3d 1262, 1264 (Fed. Cir.

2004).


## DISCUSSION

### I.   Identification of the Subject Merchandise

With its motion for summary judgment, plaintiff has provided

what it claims are samples of the subject merchandise to the

court.[3]  The Government, however, contends that Rockwell has

failed to satisfy its burden of identifying these samples as

representative of the subject merchandise.  *See Group Italglass*

*U.S.A., Inc. v. United States*, 16 CIT 766, 767, 798 F. Supp. 729,

730 (1992) ("*Italglass*").  It argues:

> Rockwell has never identified the particular
> models of timers covered by the entries in

---

[3]     Plaintiff provided eight samples in individual boxes
that have been numbered sequentially from one to eight.  Each
sample is stamped with a variation of the phrase "timing relay."
The samples have the following model numbers: (1) 700-HRM12TU24
Series C (bearing the description "single function timing
relay"); (2) 700-HRM12TA17 Series C (bearing the description "on-
delay timing relay"); (3) 700-HRC12TA17 Series C (bearing the
description "single function timing relay"); (4) 700-HRC12TU24
Series B (bearing the description "on delay timing relay"); (5)
700-HR52TA17 Series B (bearing the description "multi function
timing relay"); (6) 700-HR52TU24 Series B (bearing the
description "multi function timing relay"); (7) 700-HR52TA17
Series C (bearing the description "multi function timing relay");
and (8) 700-HR52TU24 Series C (bearing the description "multi
function timing relay").
     Although plaintiff did not import any Series C timing
relays, plaintiff insists that the "Series C models are
substantially similar to the Series B models," and thus that "the
samples before the Court, whether Series B or Series C, correctly
reflect those short body timing relays that are contained in the
subject entries."  Letter from Curtis W. Knauss to Hon. Richard
K. Eaton of 04/05/07 at 4; *see* Third Pohl Aff. ¶¶ 2-3.

> issue.  Although Rockwell submitted technical
> documentation from Omron and samples
> manufactured by Omron to the Court and to the
> Government, none of this has been shown to
> relate to the specific merchandise covered by
> the specific entries at issue.  That is,
> while the imported merchandise and the
> samples have Rockwell's model numbers on
> them, and their functions may be similar,
> there is absolutely no evidence that the
> electronics inside are the same or that their
> functions are the same.

Def.'s Mem. 10.  The crux of the Government's claim is that

plaintiff has not offered evidence that the internal electronics

and functioning of the supplied samples, which were manufactured

by Omron Corporation, are the same as the electronics and

functioning of the entered merchandise, which was manufactured by

Fuji Electric Co. Ltd.  *See* Def.'s Resp. Pl.'s Statement of

Material Facts Not in Dispute ¶¶ 6, 7 & 8; Def.'s Reply Br. Supp.

Mot. Summ. J. & Opp'n Pl.'s Resp. 3-4.

The Government correctly points out that plaintiff "has the

burden of demonstrating exactly what merchandise the Court is

being called upon to classify."  Def.'s Mem. 9; *Italglass*, 16 CIT

at 767, 798 F. Supp. at 730.  An examination of the case law

reveals how this burden is to be met.

In *Italglass*, a case challenging the denial of a protest,

the plaintiff moved for summary judgment but supplied "no

affidavit or other evidence to identify the disputed items

actually imported under the entries" in the case.  *Italglass*, 16

CIT at 767, 798 F. Supp. at 730.  The court stated that "[u]nless

stipulated between the parties, plaintiff has the burden of

submitting evidence on its motion identifying the specific items

of merchandise in the particular entries in the case that are

claimed to have been incorrectly classified by Customs." *Id.*,

798 F. Supp. at 730.  The plaintiff having failed to do so, the

court denied its motion for summary judgment.[4]

When an employee affidavit has been presented, however, this

Court has upheld its use to identify imported merchandise.  In

*E.T.I.C., Inc. v. United States*, 26 CIT 1293 (2002) (not reported

in the Federal Supplement), the plaintiff challenged the

classification of a tomato product that had previously been the

subject of a different action.  The plaintiff supported its

motion for summary judgment with the affidavit of one of its

employees, who testified that the tomato product at issue was

"identical in all respects to that at issue in" the previous

case.  *Id*. at 1293.  The defendant submitted an opposing

affidavit by a Customs import specialist, who had not examined

the product, but relied solely on the invoice descriptions.  *Id*.

---

[4]     The *Italglass* Court permitted the parties to engage in
further discovery and to submit supplemental briefing and
evidence with respect to plaintiff's motion for summary judgment.
In a later stage of the case, the Court noted that the
identification issue had been obviated by the plaintiff's
supplemental filings and observed that "identification of the
subject merchandise under the entries and commercial invoices can
be determined with reference to the verbal descriptions, style
numbers, and photographs in plaintiff's catalog." *Group Italglass
U.S.A., Inc. v. United States*, 17 CIT 226, 227 (1993) (not
reported in the Federal Supplement).

at 1293-94.  Finding the E.T.I.C. employee's affidavit

persuasive, the Court granted summary judgment for plaintiff.

*Id*. at 1294 ("The court concludes that the 'heavy juice' referred

to in the Malpica entries is equivalent to the 'puree' mentioned

in [*Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439

(Fed. Cir. 1998)], because an E.T.I.C. employee with knowledge

has sworn that the products are the same.").

Here, unlike the plaintiff in *Italglass*, Rockwell has

submitted the Pohl affidavits[5] "to identify the disputed items

actually imported under the entries in this case . . . ."

*Italglass*, 16 CIT at 767, 798 F. Supp. at 730.  Mr. Pohl is a

Senior Project Engineer at Rockwell, whose experience includes

"providing technical support and guidance to customers,

suppliers, professional organizations, and other technical

personnel" with respect to "relays and timing relays produced and

sold for [Rockwell]."  First Pohl Aff. ¶ 1.  Thus, like the

employee of the plaintiff in *E.T.I.C.*, Mr. Pohl is familiar with

the product at issue and his sworn affidavit, which states that

the Fuji-produced short body timing relays "are identical in all

---

[5]     Plaintiff has submitted the "Affirmation of Randy Pohl"
as Exhibit C to its revised motion for summary judgment; the
"Second Affirmation of Randy Pohl" as an attachment to
Plaintiff's Response to Defendant's Motion for Summary Judgment
and Reply in Support of Plaintiff's Motion for Summary Judgment;
and the "Third Affirmation of Randy Pohl" as an attachment to its
letter to the court of April 5, 2007.  Mr. Pohl's sworn
statements shall be referred to as "First Pohl Affidavit,"
"Second Pohl Affidavit" and "Third Pohl Affidavit," respectively.

material respects to the Omron short body timing relays that have
been submitted to the Court as samples," supports Rockwell's
motion.  Second Pohl Aff. ¶ 16.

The Government insists, however, that plaintiff has failed
to sufficiently identify the product contained in the entries.
*See* Def.'s Mem. 10-11 (citing *Saab v. United States*, 434 F.3d
1359, 1369 (Fed. Cir. 2006), for the proposition that "a non-
movant is required to provide opposing evidence under Rule 56(e)
only if the moving party has provided evidence sufficient, if
unopposed, to prevail as a matter of law").

It is, of course, true that on a motion for summary
judgment, the movant has the burden of coming forth with evidence
to support the factual allegations in its claims.  *See Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking
summary judgment always bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the
affidavits, if any, which it believes demonstrate the absence of
a genuine issue of material fact.") (internal quotation marks
omitted).  The court finds that plaintiff has done so with
respect to the issue of identification of some, but not all of
the subject entries.

A review of the First Pohl Affidavit reveals that Mr. Pohl

identified some of Rockwell's merchandise by model number: "The short body timing relays imported in the subject entries are listed by Rockwell under the following model numbers: 700-HR52TA17 Series C; 700-HR52TU24 Series C; 700HRM12TU24 Series C; 700-HR52TA17 Series B; 700-HR52TU24 Series B; 700-HRC12TA17 Series C; 700-HRC12TU24 Series B; and 700-HRM12TA17 Series [C]." First Pohl Aff. ¶ 3; *see also* Third Pohl Aff. ¶ 4 (correcting a typographical error).  These model numbers match the model numbers of the samples provided to the court; the samples' model numbers, in turn, correspond to certain of the model numbers that appear in the entry documentation.[6]  *Compare* Invoice No. L68842 (Jan. 13, 2000), attached to Entry No. 110-0417823-1 *and* Invoice No. F78713 (Feb. 17, 2000), attached to Entry No. 110-0418751-3 *with* First Pohl Aff. ¶ 3.

Based on the forgoing, the court finds that Rockwell has sufficiently identified the merchandise covered by the entries with respect to which it has provided samples and model numbers

---

[6]     A comparison of the sample model numbers and the model numbers of the merchandise listed in the entry documents indicates that plaintiff did not provide samples of all models covered by the entries.  For example, plaintiff did not provide a sample of 700-HX86SA17 or 700-HX86SU24, which were imported under entry numbers 110 0417823-1 and 110 0418751-3.  Moreover, Mr. Pohl's affidavit identifies the eight samples provided to the court as identical in all material respects to the imported merchandise, but makes no such statement with respect to imported merchandise for which no sample was provided.  As such, the court's decision applies only to the merchandise for which a sample was provided to the court.

corresponding to the entered merchandise.  It has thus satisfied

its burden of coming forth with evidence to support its factual

allegations with respect to identification of that merchandise.

Since plaintiff, as the movant, has met its burden with

respect to the merchandise for which it produced samples, Rule

56(e) of the rules of this Court provides that the Government, as

the adverse party, "may not rest upon the mere allegations or

denials of the adverse party's pleading," but rather

> the adverse party's pleading, by affidavits
> or as otherwise provided in this rule, must
> set forth specific facts showing that there
> is a genuine issue for trial.  If the adverse
> party does not so respond, summary judgment,
> if appropriate, shall be entered against the
> adverse party.

USCIT R. 56(e); *see also United States v. Rockwell Automation,*

*Inc.*, 30 CIT __, __, 462 F. Supp. 2d 1243, 1252 (2006) (where

movant has supported its motion as Rule 56 requires, Rule 56(e)

requires non-movant to come forward with opposing evidence).  The

Government having failed to submit any opposing evidence

demonstrating a genuine issue for trial with respect to

identification of that portion of the subject merchandise for

which the model numbers of the provided samples match the model

numbers of the entered merchandise, the court grants partial

summary judgment for plaintiff on this issue.

II.  Classification of the Subject Merchandise

The court now turns to the classification of the subject merchandise itself.  Here, the primary question is whether the subject merchandise has a "display or a system to which a mechanical display can be incorporated."  As previously noted, Customs denied plaintiff's protest and classified the subject merchandise under Heading 9107 of the HTSUS.  This heading reads:

> Time switches with clock or watch movement or with synchronous motor . . . .

HTSUS 9107.  The terms "clock movements" and "watch movements" are defined in the Additional U.S. Notes and the Notes to Chapter 91, respectively.  "Clock movements" and "watch movements" are defined as

> devices [with a] system capable of determining intervals of time, with a display *or a system to which a mechanical display can be incorporated*.

HTSUS, Ch. 91, Additional U.S. Note 1(d); HTSUS, Ch. 91, Note 3 (emphasis added).  It is undisputed that the merchandise has a system capable of determining intervals of time.[7]  It is also

---

[7]   As described by Mr. Pohl, "the short body timing relays measure a certain time interval and then activate or de-activate a subcircuit."  First Pohl Aff. ¶ 5.  The user sets the length of the delay period, which is

> accomplished by the resistor, capacitor, and oscillation timing circuitry.  The oscillation circuit produces calibrated pulses which are counted by the resistor and capacitor circuit.  After the short body

(continued...)

undisputed that the merchandise does not have a mechanical

display.  *See* Second Pohl Aff. ¶ 9; First Costello Decl. ¶ 27.

Thus, in order for Customs's classification to be sustained the

subject merchandise must have "a system to which a mechanical

display can be incorporated."

The Government insists that Customs's classification under

Heading 9107 is correct, and that Customs's 1999 and 2002 rulings

are entitled to deference in accordance with the principles set

forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)

(setting forth factors which give a Customs ruling "power to

persuade").  *See* Def.'s Mem. 12 ("HQ 962138 and HQ 964656 are

entitled to deference.") (citing *United States v. Mead Corp.*, 533

U.S. 218 (2001)).  It argues that it is entitled to prevail in

this action as a matter of law because, among other things, the

subject merchandise has a clock or watch movement, which although

having no mechanical display, has a system capable of

incorporating a display.

For its part, Rockwell argues that Customs's classification

---

[7](...continued)
        time delay relay receives a trigger signal
        the timing circuitry begins counting pulses
        until the total count value from external
        settings is achieved.

First Pohl Aff. ¶ 10.  *See also* First Costello Decl. ¶ 23 ("A
Rockwell Timer electronically measures [an] interval of time by
using an oscillator to generate specific very small intervals of
time . . . .").

under Heading 9107 is incorrect and that the subject merchandise

is correctly classified under Heading 8536.  Rockwell contends

that it is entitled to summary judgment because the subject

merchandise does not have a system to which a mechanical display

can be incorporated.  *See* Pl.'s Mem. 15.  In addition, plaintiff

argues that the 2002 Ruling is not entitled to *Skidmore*

deference.  Pl.'s Mem. 19 ("[T]he [2002 Ruling] summarily

concluded that the short body [timing relays] at issue 'ha[d] a

system to which a mechanical display can be incorporated,' which

is an essential element in classification under Heading 9107,

HTSUS.").

    A.   *Skidmore* Deference

    The court first addresses whether Customs's 1999 and 2002

rulings are entitled to *Skidmore* deference.  When determining the

degree of deference to be accorded to a Customs ruling, the

factors to be considered are "the thoroughness evident in the

classification ruling; the validity of the reasoning that led to

the classification; consistency of the classification with

earlier and later pronouncements; the formality with which the

particular ruling was established; and other factors that supply

a 'power to persuade.'"  *Warner-Lambert Co. v. United States*, 407

F.3d 1207, 1209 (Fed. Cir. 2005) (quoting *Skidmore*, 323 U.S. at

140).

    The court concludes that those portions of Customs's 1999

and 2002 rulings finding that plaintiff's merchandise has clock

or watch movements are not entitled to *Skidmore* deference because

they are unpersuasive on the question of whether the merchandise

has "a system to which a mechanical display can be incorporated."

HTSUS, Ch. 91, Additional U.S. Note 1(d); HTSUS, Ch. 91, Note 3.

The 1999 Ruling, on which Customs based its denial of

plaintiff's protest, is not persuasive on this issue.  The ruling

sets forth the pertinent provisions of the HTSUS and the

explanatory notes, but it does not contain any discussion or

finding with respect to whether the merchandise has a "display or

a system to which a mechanical display can be incorporated."

Customs's 2002 Ruling is no more persuasive.  It quotes a

report prepared by the Customs laboratory that analyzed

plaintiff's merchandise.  The report stated that each of the

relays

> has electronic circuitry that performs the
> timing functions.  Each of these circuits
> contains a component that is ". . . capable
> of determining intervals of time . . ."  The
> time delay for [one of the relays under
> consideration] is factory set, while it can
> be user-changed in [other relays under
> consideration].  In our opinion, [all of the
> above-mentioned relays] contain a watch or
> clock movement as described in Note 3 or
> Additional U.S. Note 1(d) to HTSUS Chapter
> 91.  We believe that they are "time switches"
> of HTSUS Heading 9107.

HQ 964656 at 4.  Thus, the report addressed only one of the

requirements of a clock or watch movement, i.e., whether the

subject merchandise has a system capable of determining intervals
of time.  It did not address the requirement that the merchandise
must have a display or a system to which a mechanical display can
be incorporated.

In the 2002 Ruling itself, Customs devotes a single sentence
to the latter requirement: "Our discussions with the Customs
Laboratory indicated that [certain of the components under
consideration] have a system to which a mechanical display can be
incorporated."  HQ 965646 at 4 (citing definitions of clock
movements and watch movements).  This conclusion is not
convincing since Customs does not provide any reasoning to
support it.  Rather, Customs's conclusion is based on
"discussions" with the laboratory, which were not reduced to
writing.

Even though Customs has consistently classified plaintiff's
merchandise under Heading 9107, it has failed to address the
requirement of a "display or system to which a mechanical display
can be incorporated" in its rulings.  Thus, the court concludes
that Customs's 1999 and 2002 rulings do not contain valid
reasoning with respect to, or a thorough consideration of, that
issue.  They are therefore not entitled to *Skidmore* deference.

B.   Classification Under HTSUS Heading 9107

The court next turns to the issue of whether the subject merchandise has a system to which a mechanical display can be incorporated, such that it can be said to have a "clock or watch movement," under Heading 9107.

Review of Customs classification decisions involves a dual inquiry.  The first question is the meaning of the HTSUS tariff terms at issue, which is a question of law.  The second question is of a factual nature and requires the court to determine under which HTSUS provision the subject merchandise falls.  *See Bausch & Lomb, Inc.*, 148 F.3d at 1365 (citation omitted).  A statutory presumption of correctness applies to the factual component of Customs's classification decisions, not the legal issue of the meaning of tariff terms.  *See* 28 U.S.C. § 2639(a)(1);[8] *Universal Elecs., Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir.

---

[8]     Subsection 2639(a)(1) provides:

Except as provided in paragraph (2) of this subsection [providing for civil actions commenced under 28 U.S.C. ¶ 1582], in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision.

28 U.S.C. § 2639(a)(1).

1997).  The burden lies with plaintiff to demonstrate that
Customs's classification is incorrect.  *Universal Elecs.*, 112
F.3d at 492 ("Specifically, the importer must produce evidence
(the burden of production portion of the burden of proof) that
demonstrates by a preponderance (the burden of persuasion portion
of the burden of proof) that Customs' classification decision is
incorrect.").

In determining the proper classification of merchandise, the
General Rules of Interpretation ("GRI") govern.  *See Carl Zeiss,
Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)
(citation omitted) ("The HTSUS General Rules of
Interpretation . . . and the Additional U.S. Rules of
Interpretation . . . govern the proper classification of all
merchandise and are applied in numerical order.").  The court
begins with the language of the HTSUS headings, section and
chapter notes, as the GRI require.  *See* GRI 1.  If a tariff term
is not defined by the statute or the legislative history, its
correct meaning is its common, or commercial, meaning.  *See
Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356
(Fed. Cir. 2001).  "To ascertain the common meaning of a term, a
court may consult 'dictionaries, scientific authorities, and
other reliable information sources' and 'lexicographic and other
materials.'"  *Id.* (quoting *C.J. Tower & Sons of Buffalo, Inc. v.
United States*, 673 F.2d 1268, 1271 (C.C.P.A. 1982); *Simod Am.*

*Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)).

Finally, the explanatory notes, while not binding law, offer

guidance as to how tariff terms are to be interpreted.  *See Len-*

*Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir.

2003) (noting explanatory notes are "intended to clarify the

scope of HTSUS subheadings and to offer guidance in their

interpretation").

     As noted, in order for Customs's classification to be

sustained, the subject merchandise must have a system to which a

mechanical display can be incorporated.  The Government contends

that it has such a system and cites Dr. Richard Costello's

declaration in support of its position.  In his declaration, Dr.

Costello refers to a diagram of the subject merchandise submitted

as an exhibit to plaintiff's memorandum in support of its motion.

Dr. Costello asserts that "the essential blocks or components of

a digital clock movement or a digital timer are: (1) an

oscillator, and (2) a counter."  First Costello Decl. ¶ 25.  He

then states that the oscillator and counter blocks shown in the

diagram

          can be interfaced by a suitable driver
          circuitry to an electrically operated
          mechanical display, such as a watch or clock
          hand . . . .  Such a display would be
          interfaced to the counter contained within
          the Rockwell timer under discussion, to
          provide a mechanical display, if desired . .
          . .  *In a practical sense, constructing such
          a mechanical time display would be rather
          involved and somewhat complicated, but*

> *conceptually, or theoretically, it is*
> *possible.  It could be built.*

First Costello Decl. ¶¶ 26-27 (emphasis added).  The Government

maintains that the statute requires that the incorporation of a

mechanical display be possible, i.e., that it *can* be done - not

that it is commercially practical to do so.  Def.'s Supplemental

Br. 1-2 ("Note 3 [defining "watch movements"] does not state that

incorporating a display has to be practical or commercially

feasible; it has to be able to be done.").

Plaintiff, on the other hand, argues that the subject

merchandise does not have a system to which a mechanical display

can be incorporated and that the HTSUS contemplates that the

ability to incorporate a mechanical display must be more than a

mere theoretical possibility.  Plaintiff argues that Congress's

use of the word "incorporated"

> implies that an article has been designed and
> manufactured to accept . . . a display system
> with a specific connection interface, not
> some Rube Goldberg, ad hoc contraption
> developed after production. . . .  Clearly,
> the theoretical possibility posited by the
> government does not relate to the condition
> of the [short body timing relay] as imported,
> but merely constitutes speculation as to some
> post-importation, post-production
> reconfiguration of the product.

Pl.'s Supplemental Br. 2.

The court concludes that the subject merchandise does not

have "a system to which a mechanical display can be

incorporated."  In reaching this conclusion, the court agrees

with plaintiff that the word "incorporated" when combined with
the word "system" compels the rejection of Customs's
classification.  The word "system" means "a complex unity formed
of many often diverse parts . . . serving a common purpose."
Webster's Third New International Dictionary 2322 (2002).
Applied to the words of the HTSUS, the purpose of the "system" at
issue here is to facilitate the incorporation of a display into
the subject merchandise.  That is, to be classified under Heading
9107 plaintiff's merchandise must have a system whose purpose is
to allow the incorporation of a display.[9]

     Moreover, the merchandise must have such a system at the
time of importation.  *See United States v. Citroen*, 223 U.S. 407,
414-15 (1911) ("The rule is well established that in order to
produce uniformity in the imposition of duties, the dutiable
classification of articles imported must be ascertained by an
examination of the imported article itself, in the condition in
which it is imported.") (internal quotation marks omitted); *Mita
Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir.
1994).  As each expert makes clear, the subject merchandise does

_____

     [9]     Reference to other language in the notes defining
"clock movements" (Additional U.S. Note 1(d)) and "watch
movements" (Note 3) supports this conclusion.  For example,
Additional U.S. Note 1(d) states that clock movements are
"devices regulated by . . . any other *system* capable of
determining intervals of time."  HTSUS, Ch. 91, Additional U.S.
Note 1(d) (emphasis added).  In other words, this system must
have as its purpose the capacity to measure time.

not satisfy this requirement.  *See* First Costello Decl. ¶ 27 ("In

a practical sense, constructing such a mechanical time display

would be rather involved and somewhat complicated, but

conceptually, or theoretically, it is possible."); Second Pohl

Aff. ¶¶ 9 (likening the "scenario of incorporating a display into

the subject timing relays [described by Dr. Costello in his

declaration] to taking a radio, [and] modifying the circuitry by

adding a display to make a television"); 10 ("[T]here is no

system to which a mechanical display can be

incorporated . . . .").  It is therefore apparent that, at the

time of importation, the subject merchandise had no system whose

purpose was to facilitate the addition of a display.  Therefore,

the subject merchandise does not have a "clock or watch movement"

and is not properly classifiable under Heading 9107.

    C.   Classification Under HTSUS Heading 8536

    Plaintiff has overcome its burden of demonstrating that

Customs's classification is incorrect.  Thus, in accordance with

the holding in *Jarvis Clark Co. v. United States*, 733 F.2d 873,

878 (Fed. Cir. 1984), the court now turns to the question of

whether Heading 8536, or another provision of the HTSUS, provides

the correct classification of the subject merchandise.  The court

concludes that the merchandise is properly classifiable under

HTSUS Heading 8536.

    Applying GRI 1, the court must determine the correct

classification "according to the terms of the headings and any

relative section or chapter notes . . . ."  GRI 1.  Heading 8536

covers

> [e]lectrical apparatus for switching or
> protecting electrical circuits, or for making
> connections to or in electrical circuits (for
> example, switches, relays, fuses, surge
> suppressors, plugs, sockets, lamp-holders,
> junction boxes), for a voltage not exceeding
> 1,000 V . . . .[10]

Although the terms of Heading 8536 are not defined in the section

or chapter notes, the explanatory notes, a recognized, albeit

non-binding, guide to interpreting tariff terms, provide:

> Relays are electrical devices by means of
> which the circuit is automatically controlled
> by a change in the same or another circuit.
> They are used, for example, in
> telecommunication apparatus, road or rail
> [signaling] apparatus, for the control or
> protection of machine-tools, etc.
> The various types can be distinguished by,
> for example:
>
> (1) The electrical means of control used:
> electromagnetic relays, permanent magnet
> relays, thermo-electric relays, induction
> relays, electro-static relays, photoelectric
> relays, electronic relays, etc.
>
> (2) The predetermined conditions on which
> they operate: maximum current relays, maximum
> or minimum voltage relays, differential
> relays, fast acting cut out relays, time
> delay relays, etc.

4 World Customs Org., Harmonized Commodity Description and Coding

---

    [10]    Because there is no dispute that the merchandise does
not exceed 1,000 volts, this aspect of Heading 8536 is satisfied.

System Explanatory Notes ("Explanatory Notes") § 85.36(I)(C), at 1504 (1998); *see also* Webster's Third New International Dictionary 1917 (2002) (defining relay as "an electromagnetic device for remote or automatic control that is actuated by a variation in conditions of an electric circuit and that operates in turn other devices (as switches, circuit breakers) in the same or a different circuit").

The undisputed facts together with the court's observations lead to the conclusion that the subject merchandise meets the definition of a relay. *See Dolly, Inc. v. United States*, 27 CIT 1597, 1609, 293 F. Supp. 2d 1340, 1350 (2003). That is to say, the subject merchandise is an "electrical device[] by means of which [a] circuit is automatically controlled by a change in the same or another circuit." Explanatory Notes § 85.36(I)(C), at 1504. As described by the parties and noted in the background section, *supra*, the subject merchandise is used in a control panel on an assembly operation or conveyor line. When electrical power has been applied to the electrical system of which the subject merchandise is a component, the subject merchandise directs electrical power to specific apparatus at the rate specified by the user. The internal components of the subject merchandise include stationary and moveable parts to which electric power is applied in order to complete a circuit. Heading 8536 thus accurately describes the use and function of

the merchandise at issue.  Furthermore, it specifically

contemplates, *eo nomine*,[11] the classification of relays

thereunder, i.e., relays that are used to make connections to

electrical circuits.  The subject merchandise is thus properly

classifiable as a relay under HTSUS Heading 8536.


                          CONCLUSION

     The court finds that the subject merchandise, with respect

to which plaintiff supplied samples to the court, i.e., those

whose model numbers match the model numbers of the imported

merchandise, is properly classifiable under HTSUS Heading 8536.

Summary judgment is granted in favor of Rockwell as to that

merchandise.  The Government's cross-motion is denied.  The

parties are directed to confer and jointly submit, no later than

May 17, 2007:

     (1) a proposed Judgment, specifically identifying the

merchandise covered by this opinion; and

---

     [11]    *Eo nomine* means "[b]y or in that name."  Black's Law
Dictionary 575 (8th ed. 2004).  "[A]n *eo nomine* provision . . .
describes a commodity by a specific name, usually one common in
commerce.  Absent limiting language or indicia of contrary
legislative intent, such a provision covers all forms of the
article."  *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed.
Cir. 1995).

    (2) a proposed Scheduling Order for trial with respect to
the remaining merchandise.


                                         /s/ Richard K. Eaton
                                            Richard K. Eaton

Dated:     May 7, 2007
           New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                              Deputy Clerk